IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT WHIPPLE )
)
v. ) NO. 3-11-0206
) JUDGE CAMPBELL
CHATTANOOGA-HAMILTON )
COUNTY HOSPITAL AUTHORITY )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 96). For the reasons stated herein, Defendant's Motion for Summary Judgment (actually a Motion for Partial Summary Judgment) is GRANTED, and Plaintiff's claims related to Short Stay Claims, Same Day Surgery Claims, and Renal Dialysis Claims are DISMISSED.[1]

FACTS

Plaintiff brought this action pursuant to the False Claims Act ("FCA"),[2] 31 U.S.C. § 3729 *et seq.*, alleging that Defendant intentionally defrauded the United States by knowingly submitting fraudulent reimbursement claims to Medicare, Medicaid, Tricare/Champus, and other federally-funded government healthcare programs. Plaintiff alleges that he discovered Defendant's fraudulent behavior in 2006 while working as a Revenue Cycle Consultant for ACS Healthcare Solutions and performing auditing services for Defendant related to its billing procedures for government

---

[1] Basically, short stay claims involve allegations of billing patients for inpatient care when they should have been billed as outpatient or observation. Same day surgery claims involve allegations of improperly adding observation charges to claims for outpatient surgeries. Renal dialysis claims involve allegations that Defendant improperly billed certain dialysis procedures as inpatient claims when they should have been billed as outpatient or observation.

[2] A FCA lawsuit is sometimes referred to as a *qui tam* action.

healthcare programs. Complaint (Docket No. 1). The United States and the States of Tennessee, North Carolina and Georgia declined to intervene herein.

Defendant previously moved to dismiss this action for lack of subject matter jurisdiction, contending that Plaintiff's claims are barred by the "Public Disclosure Bar." The Court determined that this issue should be decided on a Motion for Summary Judgment after limited discovery. Docket No. 71-72.[3] In the pending Motion for Summary Judgment, Defendant claims that Plaintiff's allegations relating to Short Stay Claims, Same Day Surgery Claims, and Renal Dialysis Claims are barred by the Public Disclosure Bar,[4] because these allegations and transactions were publicly disclosed during an audit and investigation that lasted more than three years and resulted in Defendant's payment of almost $500,000 to the government to resolve the allegations.

## SUMMARY JUDGMENT

Because this is a factual attack on subject matter jurisdiction under the FCA, the Court is empowered to weigh the evidence and no presumptions apply as to the truthfulness of the relator's allegations. *United States ex rel. Burns v. A.D. Roe Co., Inc.*, 186 F.3d 717, 722 (6th Cir. 1999). The Court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case. *Hornberger v. Tennessee*, 782 F.Supp.2d 561, 564 (M.D. Tenn. 2011) (non-FCA case).

---

[3] A challenge under the FCA jurisdictional bar is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment. *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011).

[4] Plaintiff also contends that Defendant improperly billed Medicare for services related to carotid artery stents. Complaint, ¶¶ 166-171. Defendant concedes that the carotid artery stent claims were not within the scope of the alleged public disclosures that occurred between 2006 and 2009. Docket No. 97.

Relator bears the burden of alleging the facts essential to show jurisdiction and supporting those facts with competent proof. *United States ex rel. Grynberg v. Pacific Gas and Electric Co.*, 562 F.3d 1032, 1045 (10th Cir. 2009).

PUBLIC DISCLOSURE BAR

<u>WHICH STATUTE APPLIES</u>

As a preliminary matter, the parties ask the Court to determine which version of the Public Disclosure Bar provisions to apply - the statute before the Patient Protection and Affordable Care Act of 2010 or the statute as it exists today. The former was in effect at the time of the alleged misconduct, and the latter was in effect at the time this action was filed.

The Supreme Court has noted that the 2010 amendments to the FCA make no mention of retroactivity, *Graham County Soil and Water Conservation District v. United States ex rel. Wilson*, 130 S.Ct. 1396, n. 1 (2010), and, relying on *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997), declined to apply the 2010 amendments to a case pending at the time of the amendments. In *Hughes*, the Court relied on the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place, noting that this principle has "timeless and universal appeal." *Hughes*, 520 U.S. at 946.

More recently, a District Court in Georgia, citing *Graham* and *Hughes*, applied the statute as it existed at the time of the alleged misconduct. *United States ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, 906 F.Supp. 2d 1264, 1272, n.2 (N.D. Ga. 2012). Another court, noting *Graham*'s holding that the new version of this statute should not be considered retroactive, analyzed the action before it under the former statute but also addressed the effect of the current statute on the relator's claims. *United States v. Smith & Nephew*, 749 F.Supp.2d 773, 781 (W.D. Tenn. 2010); *see*

3

*also Little v. Shell Exploration & Production Co.*, 690 F.3d 282, 292 (5th Cir. 2012) (applying pre-amendment statute because text not retroactively applicable).

Defendant cites *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009) for the argument that the jurisdiction of the court depends upon the state of things at the time the action was brought.[5] *See also United States ex rel. Bartz v. Ortho-McNeil Pharmaceutical, Inc.*, 856 F.Supp.2d 253, 260 (D. Mass. 2012) (basis for jurisdiction must be apparent from the facts existing at the time the complaint is brought).

Applying the reasoning of *Graham* and *Hughes*, the Court finds that the alleged misconduct should be judged under the statute as it existed at the time of that alleged misconduct. On the other hand, the Court finds that the jurisdiction of the Court should be determined under the statute as it existed at the time this action was filed. The Court finds, however, that under either statute, Plaintiff's action is barred by the Public Disclosure Rule.

PUBLIC DISCLOSURE STATUTES

The FCA's public disclosure provision limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information. *Poteet*, 552 F.3d at 511. The statute, as it existed before 2010, provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

---

[5] *Poteet* pre-dates the 2010 amendments, and therefore could not have considered which Public Disclosure Bar provisions to apply.

31 U.S.C. § 3730(e)(4)(A) (pre-2010).[6]

Subsection (B), prior to the 2010 amendments, defined "original source" as an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing the action under this section which is based on the information. 31 U.S.C. § 3730(e)(4)(B) (pre-2010). [7]

PUBLIC DISCLOSURE

To determine whether this jurisdictional bar applies, the Court must consider first whether there has been any public disclosure of fraud, and secondly, whether the allegations in the instant case are based upon the previously disclosed fraud. *Poteet*, 552 F.3d at 511.

---

[6] The current version of this public disclosure statute provides:

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed - -

(i) in a Federal criminal, civil or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

[7] The current statute defines "original source" as an individual who either: (1) prior to a public disclosure has voluntarily disclosed to the government the information on which allegations or transaction in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the government before filing an FCA action. 31 U.S.C. § 3730(e)(4)(B).

5

Defendant alleges that Plaintiff's allegations were previously raised and made public in connection with a 2006-2009 audit and investigation. Defendant also maintains that Plaintiff's Complaint is based upon those publicly disclosed allegations and transactions.

Plaintiff contends that fraudulent activity was never revealed to the government and that the government's information was never disclosed to the public. Plaintiff also argues that his Complaint is not based upon any alleged public disclosures but, rather, upon Plaintiff's own direct and independent knowledge.

For Plaintiff's *qui tam* action to be barred by the Public Disclosure Rule, the disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by Plaintiff herein. *Poteet*, 552 F.3d at 511. Stated another way, the Court must determine (1) whether there has been a public disclosure in the enumerated hearings, reports, audits or investigations or the news media (2) of the allegations or transactions which form the basis of Plaintiff's complaint and (3) whether this action is based upon the publicly disclosed allegations or transactions. *United States ex rel. Gale v. Omnicare, Inc.*, 2012 WL 4473265 at *4 (N.D. Ohio Sept. 26, 2012) (citing *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998)). If the answer is "no" to any of these inquiries, then the *qui tam* action may proceed. If the answer is "yes," then the Court must determine whether Plaintiff qualifies as an "original source" under the statute, which would also allow this action to proceed. *Gale* at * 4; *Jones* at 330.

For purposes of the Public Disclosure Rule, a "public disclosure" occurs when the critical elements exposing the transaction as fraudulent are placed in the public domain. *United States ex rel. Yarberry v. Sears Holding Corp.*, 2013 WL 12987058 at * 7 (S.D. Ill. March 28, 2013). A

public disclosure brings to the attention of the relevant authority that there has been a false claim against the government. *Id.* A public disclosure reveals fraud if the information is sufficient to put the government on notice of the likelihood of related fraudulent activity. *United States ex rel. Robinson-Hill v. Nurses' Registry and Home Health Corp.,* 2012 WL 4598699 at * 11 (E.D. Ky. Oct. 2, 2012) (citing *Poteet*, 552 F.3d at 512). The key issue is whether enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud. *Robinson-Hill* at * 11. All that is required is that public disclosures put the government on notice to the *possibility* of fraud. *Poteet*, 552 F.3d at 512. To qualify as a public disclosure of fraud, the disclosure is not required to use the word "fraud" or provide a specific allegation of fraud. *Id*.

Plaintiff argues that disclosure to the government is not sufficient to qualify as "public disclosure." There is a conflict in the case law as to whether disclosure to the government is "public disclosure" under this provision.

The U.S. District Court for the Western District of Tennessee has held that disclosure to government officials does not substitute for disclosure to the public. *Smith & Nephew*, 749 F.Supp.2d at 784 (citing, among others, *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720 (1st Cir. 2007, *abrogated on other grounds, Allison Engine Co. v. United States ex rel Sanders*, 128 S.Ct. 2123 (2008)); *see also Bartz.*, 856 F.Supp.2d at 260 ("While the allegations need not be common fodder, they must be disseminated beyond the government's inner precincts.").

Another court has held that disclosure of information to a competent public official about an alleged false claim against the government is "public disclosure" within the meaning of the Public Disclosure Bar when the official is authorized to act for or to represent the community on behalf of government. *United States ex rel. Lancaster v. Boeing Co.*, 778 F.Supp.2d 1231, 1244 (N.D. Okla.

7

2011). "The point of public disclosure of a false claim against the government is to bring it to the attention of the authorities, not merely to educate and enlighten the public at large about the dangers of misappropriation of their tax money." *Id.* Public disclosure occurs only when the allegations of fraudulent transactions are affirmatively provided to others not previously informed thereof. *Id.* at 1245. The Sixth Circuit has stated that a prior disclosure of fraud is public if it is made in a congressional, administrative or Government Accounting Office report, audit or investigation. *Poteet*, 552 F.3d at 512.

In this case, Defendant maintains that the information was publicly disclosed to more than just the government, through the investigations, oversights and audits conducted by the government, consultants, attorneys and contractors.

For example, the Office of Inspector General ("OIG") agent instructed AdvanceMed Corporation, the Medicare Part A Program Safeguard Contractor for Tennessee, to review the allegations that Defendant was improperly billing observation patients as inpatients. Docket No. 117, ¶ 25. Defendant engaged outside counsel, King & Spalding, to assist with the OIG investigation. *Id.*, ¶ 39. Then Defendant and its counsel engaged Deloitte Financial Advisory Services as an independent billing consultant. *Id.*, ¶ 42.

At a later point, the OIG agent informed and consulted with the U.S. Attorney's Office for the Eastern District of Tennessee about the AdvanceMed "Fraud Case Referral" concerning Defendant. Docket No. 117, ¶¶ 55-56; Docket No. 107-16. During this time period, Defendant also apprised Lee Penninger, monitor from the Office of Counsel to the Inspector General, of the ongoing developments related to the audit and investigation. *See, e.g.,* Docket No. 107-16.

An OIG Report of Investigative Activity concerning Defendant (Docket No. 107-15) states that "Experts with specific knowledge of the issues in question have been secured and have already begun the process of reviewing/auditing the billing." Counsel's June 26, 2008 letter to OIG reflects that the investigation included an "independent audit process and findings" and states that it was acceptable for Defendant to engage independent auditors, which included seven persons from Deloitte. Docket No. 107-7. That letter also reflects that at least ten of Defendant's employees were interviewed by attorneys and auditors regarding the allegations. *Id.*[8]

In *Gale*, the court characterized an audit and administrative hearing as public disclosures under the FCA. *Gale*, 2012 WL 4473265 at * 4 (court applied the public disclosure bar even though the previous public disclosures dealt with a subsidiary). In *United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168 (5th Cir. 2004), the court held that audits conducted by fiscal intermediaries and investigation conducted by Health Care Financing Administration resulted in "public disclosures" of the information underlying the relator's complaint. *Id.* at 175.

The Sixth Circuit has found two types of disclosures sufficient to put the government on notice of fraud. *Poteet*, 552 F.3d at 512. First, if the information about both a false set of facts and the true state of facts has been disclosed, the court will find that there is adequate public disclosure because fraud is implied. *Id.* Second, if there has been a direct allegation of fraud, the court will

---

[8] Plaintiff cites cases which hold that disclosures pursuant to Freedom of Information Act ("FOIA") requests are public disclosures. This is not a FOIA case, however. There is no requirement that information must be available through a FOIA request in order to be publicly disclosed.

9

find a public disclosure because such an allegation, regardless of the specificity, is sufficient to put the government on notice of the potential existence of fraud. *Id.* at 513.

Here, the prior audit and investigation included disclosure of the true set of facts (what should have been billed) and the false set of facts (what was actually billed) for specific claims. As noted above, if the information about both a false set of facts and the true state of facts has been disclosed, the court will find that there is adequate public disclosure because fraud is implied.

Therefore, since the information has been publicly disclosed, the Court must determine whether the information which was publicly disclosed forms the basis of Plaintiff's Complaint herein.

BASIS FOR PLAINTIFF'S COMPLAINT

A complaint is based upon a public disclosure when it is supported by the previously disclosed information. *Poteet*, 552 F.3d at 514. To determine whether an action is based upon a public disclosure, a court should look to whether substantial identity exists between the publicly disclosed allegations or transactions and the *qui tam* complaint. *Id.* Any action based even partly upon public disclosures will be jurisdictionally barred. *Id.*

The allegations of Plaintiff's Complaint at issue herein concern Short Stay Claims, Same Day Surgery Claims, and Renal Dialysis Claims. Plaintiff alleges that Defendant improperly billed the government for these types of claims in 2005-2006, essentially arguing that the amounts billed were not the amounts which should have been billed, resulting in overpayments to Defendant. The prior investigation and audit included claims from 2005-2006 associated with short stays, same day surgeries, and renal dialysis, claims which were allegedly improperly billed.

For example, the Opening Investigative Memorandum of the OIG indicates that review of the 2005-2006 claims based on inpatient stays revealed "errors" in billing for services without a valid admission order from the physician; billing for inpatient services that should have been billed as outpatient services; billing for inpatient services when the physician ordered observation status; and billing for services that do not support the Diagnosis Related Group (DRG) code billed. Docket No. 107-13. The OIG's Opening Memorandum also noted that the alleged violations were 18 U.S.C. § 1347 Healthcare Fraud and 18 U.S.C. § 287 False Claims, which are federal criminal statutes.[9] *Id*.

A "Fraud Case Referral" letter, dated July 3, 2007, from AdvanceMed to OIG indicates that Defendant was upcoding outpatient observation claims as inpatient claims. Docket No. 107-11. This behavior is characterized as "alleged fraudulent billing practices." *Id*. The letter also reflects that OIG asked AdvanceMed to review the allegations and refer the matter to OIG "should fraud issues arise." *Id*. This letter reflects that AdvanceMed *did* refer the results of its investigation to OIG. *Id*. The four categories of potential "overpayments" identified by AdvanceMed in its referral were (1) inpatient services without a valid physician order; (2) inpatient services that should have been billed as observation services; (3) inpatient services when the physician had ordered observation services; and (4) services that did not meet Medicare medical necessity standards for inpatient admission. *Id*.[10]

Defendant's Chief Compliance Officer has testified that areas of concern to OIG in the spring of 2008 included billing for inpatient short stays and observation stays and questions about inpatient

---

[9] The OIG Closing Memorandum included this same language. Docket No. 107-

[10] The Fraud Case Referral noted that admissions were inappropriately ordered, including routine renal dialysis, which is typically performed with a short-stay expectation and thus is usually an outpatient procedure. Docket No. 107-11.

versus outpatient status. Docket No. 107-26, ¶ 21. She and Defendant's counsel also informed OIG that Deloitte was conducting a "broad-based review of the short stay-related issues." Docket No. 117, ¶¶ 44 and 50.

In counsel's report to the OIG concerning the governmental inquiry, she identifies that OIG was concerned about the following Short-Stay Admission/Observation Issues: billing for inpatient services without a valid physician admission order; billing for inpatient services which should have been billed as outpatient observation services; billing for inpatient services when the physician ordered observation services; and billing for services that did not support the DRG Code for inpatient charges. Docket No. 107-7.

Similarly, Plaintiff's Complaint alleges that Defendant improperly billed patients as inpatients instead of outpatients or observation patients. Plaintiff contends that Defendant's employees changed the admission statuses of patients, sometimes even after discharge, to bill at the higher inpatient rate. Plaintiff avers that Defendant billed outpatient surgeries to the Government with illegal, medically unnecessary, observation admission status charges. Plaintiff asserts that Defendant fraudulently billed patients that met outpatient and observatory admission criteria as inpatients so as to be reimbursed for unauthorized renal dialysis services that are reimbursable only for patients admitted as inpatients. Docket No. 1, ¶ 112.

The Court finds that Plaintiff's allegations with regard to these short-stay and renal dialysis admissions are based upon and supported by the prior investigations by Defendant, AdvanceMed, Deloitte and OIG. The information gathered by these investigators, auditors, employees, attorneys and government agencies was sufficient to put the Government on notice that Defendant was submitting improper and allegedly fraudulent bills. That they ultimately found no fraud does not

12

automatically mean that the same information was not disclosed to them. They had information about possible fraud - the misrepresented state of facts and the true state of facts.

As noted above, a public disclosure reveals fraud if the information is sufficient to put the government on notice of the likelihood of related fraudulent activity. *Robinson-Hill*, 2012 WL 4598699 at * 11. The key issue is whether enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud. *Id.*

The alleged billing improprieties were brought to the attention of the government through an anonymous call, not by Plaintiff. The government initiated the 2006-2009 audit and investigation; Plaintiff did not. The information discovered in that audit and investigation was not simply "innocent" information; rather, the information alerted the government to potentially fraudulent activity and apprised the government of the discrepancies between what was billed and what should have been billed.[11]

For all these reasons, the Court finds that Plaintiff's Complaint herein is based upon and supported by the information which was publicly disclosed in the prior investigations. Because the Court has determined that Plaintiff's allegations were based upon public disclosure, Plaintiff must show that he was an "original source" for the Court to have jurisdiction over this action.

ORIGINAL SOURCE

An "original source" is an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing the action under this section which is based on the information. 31 U.S.C.

---

[11] As Plaintiff points out, the question is whether the disclosed information suggests an inference of impropriety. Docket No. 116, p. 29 (citing *Jones*, 160 F.3d at 331).

§ 3730(e)(4)(B) (pre-2010). Thus, under the prior law, Plaintiff must establish two elements to prove he is an original source: both (1) direct and independent knowledge and (2) voluntary provision of the information to the government before filing suit. *Burns*, 186 F.3d at 725.

The word "direct" requires knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others. *Reagan*, 384 F.3d at 177. The relator's knowledge is considered "independent" if it is not derived from the public disclosure. *Id*. Another court has stated: "Independent knowledge is knowledge that does not depend on public disclosures , , , [d]irect knowledge is knowledge obtained without any intervening agency, instrumentality or influence." *United States Dept. of Transp. ex rel. Arnold v. CMC Engineering*, 745 F.Supp.2d 637, 643 (W.D. Pa. 2010); *see also United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 59 (1st Cir. 2009) (knowledge based on research into public records, review of publicly disclosed materials, or some combination thereof, is not direct).

Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden of establishing the requisite knowledge. *Grynberg*, 562 F.3d at 1045. A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed. *Id*. The fact that a relator has background information or unique experience allowing him to understand the significance of publicly disclosed allegations and transactions is also insufficient. *Id.* "If a relator merely uses his or her unique expertise or training to conclude that the material elements already in the public domain constitute a false claim, then a *qui tam* action cannot proceed."*Ondis*, 587 F.3d at 59.

The alleged misconduct in this case took place before Plaintiff worked for Defendant, so Plaintiff's knowledge thereof was secondhand. Plaintiff worked at Defendant's facility from early 2006 until mid-summer 2006. He has no first-hand knowledge concerning the circumstances surrounding the submission of claims before his arrival or concerning the decisions made at the time of submission whether to bill those claims as inpatient, outpatient or observation stays. Plaintiff argues that he was able to discover the allegedly fraudulent claims by applying his personal experience and knowledge to the "raw data." Even though Plaintiff obtained information during the scope and course of his employment, that information was from other sources, including spread sheets and medical records from past submissions. Plaintiff has not shown that he was involved in or witnessed any fraudulent activity while he was at Defendant's facility.

There is no dispute that Plaintiff provided information to the government before filing this action. The Court finds, however, that, under the pre-2010 statute, Plaintiff did not have direct and independent knowledge of the alleged misconduct.

Alternatively, under the current statute, "original source" is one who either (i) prior to a public disclosure has voluntarily disclosed to the government the information upon which allegations or transactions in a claim are based or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the government before filing his FCA action. 31 U.S.C. § 3730(e)(4)(B).

Plaintiff does not contend that he falls under subsection (i). Rather, Plaintiff argues that he has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. Again, there is no dispute that Plaintiff provided the information to the government before filing this action.

15

Plaintiff specifically asserts that he materially adds to the prior investigation by bringing forth facts to demonstrate the required scienter to prove fraud. As stated above, however, the scope of the prior investigations offered ample opportunities for others to determine whether scienter existed, whether Defendant intentionally lied to the government. Just because Plaintiff does not agree with what those investigators found does not mean that he is an original source under the FCA.

In *Reagan*, the court found that if the relator informed the government of anything that was new and independent from the earlier audits and investigations, it was only her disagreement with the results of the prior investigative work; that is, that the auditors and investigators simply failed to recognize fully the fraudulent nature of the defendants' activities. *Reagan*, 384 F.3d at 178. "This proffer is not information obtained from 'independent' knowledge; it is only a difference of opinion with respect to the same information." *Id*.

Similarly, here, Plaintiff contends that what was not "publicly disclosed" was fraudulent intent; that is, the auditors, investigators and government failed to find the fraudulent nature of what they characterized as billing errors and overpayments. Plaintiff basically argues that the government, auditors, attorneys, investigators and Defendant did not do enough, did not do a thorough job, did not find the "right" answers. *See, e.g.,* Docket No. 116, pp. 13 and 27. Plaintiff's disagreement with how the investigation was conducted and how the matter was administratively resolved is not the issue. As Defendant notes, the issue is not whether the government could or should have done more to investigate these improper and allegedly fraudulent submissions.

The Court finds that the information upon which Plaintiff's federal claims for Short Stay Claims, Same Day Surgery Claims, and Renal Dialysis Claims are barred by the Public Disclosure laws.

STATE LAW CLAIMS

Tennessee, North Carolina and Georgia have "public disclosure" statutes which basically mirror the federal law. Tenn. Code Ann. § 71-5-183(e)(2); N.C. Gen. Stat. § 1-611(d); and Ga. Code Ann. § 49-4-168.2. The Court finds nothing to distinguish the analysis under these state law provisions from the above analysis under federal law.

Therefore, for the same reasons that Plaintiff's claims are barred under federal law, the Court finds that the claims at issue are barred under the three states' laws cited above.

CONCLUSION

Therefore, for these reasons, the Court finds that Plaintiff's federal and state law claims regarding Short Stay Claims, Same Day Surgery Claims, and Renal Dialysis Claims are barred by the Public Disclosure Bar, and this Court lacks jurisdiction to hear those claims. Defendant's Motion for Partial Summary Judgment on these claims is GRANTED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE